UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL NEVIN,

    Plaintiff,

v.

CITY OF DETROIT, Michigan municipal corporation, d/b/a DETROIT FIRE DEPARTMENT, and ROBERT DISTELRATH, 2d Deputy Director of the Fire Commission and former City of Detroit Fire Chief of Operations, in his individual and official capacities,

    Defendants.

Case No.
Hon.

Joel B. Sklar (P38338)
LAW OFFICES OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529 / 313-963-9310 (fax)
joel@joelbsklarlaw.com

## **COMPLAINT AND JURY DEMAND**

Plaintiff, Michael Nevin, by and through his attorney, Law Offices of Joel B. Sklar, files this Complaint and Jury Demand against Defendants City of Detroit d/b/a Detroit Fire Department (DFD), 2nd Deputy Commissioner of the Detroit Fire

Commission and former City of Detroit Fire Chief of Operations Robert Distelrath, in his official and individual capacities, and says:

1.  This is a civil rights action filed pursuant to *42 USC § 1983* for the violation of Plaintiff Michael Nevin's clearly established *First Amendment* right to speak out on matters of substantial public concern without fear of government reprisal or retaliation. Plaintiff Michael Nevin (Nevin) is a Battalion Chief in the City of Detroit Fire Department (DFD) and, from December 2015 to December 2019, was the president of the Detroit Fire Fighters Association, Local 344 ("DFFA" or "Union"). During this period, Plaintiff filed over thirty unfair labor practice charges and MIOSHA complaints. On November 29, 2018, Plaintiff posted a message on both the DFFA's and his personal Facebook page "to express professional factual concern publicly over Detroit Police / Fire and EMS mismanagement, manipulation and flat out misrepresenting public safety response to the public." When Plaintiff spoke out, he did so as a citizen speaking on matters of substantial public concern. Plaintiff's speech angered Defendant Distelrath, the former Chief of the City of Detroit Fire Department (DFD), current 2nd Deputy Fire Commissioner and others in City of Detroit administration. Defendant Distelrath engaged in deliberate acts of retaliation as described herein against Plaintiff because of his protected speech which would deter persons from ordinary firmness from speaking out.

2. Plaintiff Michael Nevin resides in and transacts business in the City of Detroit, Wayne County, Michigan, which is located in this District.

3. During all relevant periods, Defendant Robert Distelrath was the Chief of the Fire Operations for the City of Detroit and the DFD's chief policy maker. Defendant Distelrath is now the 2nd Deputy Fire Commissioner for the City of Detroit. At all times, Defendant Distelrath was operating under color of state law. Defendant Distelrath resides in and transacts business in the City of Detroit, Wayne County, Michigan which is located in this District. Defendant Distelrath is being sued in his official and individual capacities pursuant to *42 USC § 1983*.

4. Defendant City of Detroit is a Michigan municipal corporation which does business as the "City of Detroit Fire Department" (DFD) and is located in this District.

5. Defendant Distelrath used his position of state conferred power and authority to violate Plaintiff's clearly established *First Amendment* rights to speak out on matters of substantial public concern (i.e., public safety, operation of government, allocation of taxpayer monies, misrepresentation of information disseminated to the public, etc.). Defendant Distelrath's actions were clearly unreasonable. As such, he is not entitled to qualified immunity.

6. The transactions, events and occurrences which give rise to this action all took place in Wayne County, Michigan which is located in this District.

7. This Court has original subject matter jurisdiction over this controversy pursuant to *28 USC § 1331* and the amount in controversy exceeds the jurisdictional limit of this Court, exclusive of costs, fees and interest.

## COMMON ALLEGATIONS

8. Plaintiff Michael Nevin reasserts paragraphs 1 through 7 as though fully set forth herein word for word and paragraph for paragraph.

9. Plaintiff Michael Nevin is a 33-year employee of the City of Detroit where he works as a fire fighter with the current rank of Battalion Chief.

10. In December of 2015, Plaintiff Nevin was elected as President of the Detroit Fire Fighters Association, Local 344 ("DFFA" or "Union") to serve a three-year term.

11. The DFFA represents a bargaining unit consisting of approximately 800 fire firefighters, 200 EMTs, paramedics and other non-civilian employees of the City of Detroit.

12. During the period of 2017 to 2019, the DFFA filed approximately thirty or more grievances per year, as well as an unspecified number of unfair labor practices and claims with the Michigan Occupational Safety and Health Administration (MIOSHA).

13. In addition, Plaintiff and the DFFA were openly critical of slow 911 response times which jeopardized public safety and the publication by the City of

4

Detroit of erroneous statistics and other false information presented to the public as true.

14. On November 29, 2018, Plaintiff Nevin posted on the DFFA's Facebook page, and his personal Facebook page, his concern over the City of Detroit's "mismanagement, manipulation and flat out misrepresenting public safety response to the public" which placed firefighters and citizens in danger.

15. Defendant Distelrath learned of the posting by Deputy Fire Commissioner Sydney Puricelli and Chief of Communications Wyatt.

16. Defendant Distelrath also learned that the Detroit Police Department (DPD) had initiated an Internal Affairs (IA) investigation against Plaintiff despite the fact that Plaintiff violated no policy or law of any kind.

17. Plaintiff's disclosures concerning slow response times and other issues which endangered firefighters and the public, angered, annoyed and embarrassed Defendant Distelrath, as well as other City of Detroit officials.

18. On December 3, 2018, Defendant Distelrath met with Sgt. Deanna Wilson, the DPD officer assigned to conduct the IA investigation about Plaintiff's disclosures.

19. On December 17, 2018, Sgt. Wilson submitted a warrant regarding Plaintiff to Wayne County Prosecutor Kym Worthy.

20. Two days later, the Wayne County Prosecutor's Office returned the warrant, indicating additional evidence was required.

21. On March 21, 2019, Sgt. Wilson resubmitted the warrant request.

22. On April 22, 2019, the Wayne County Prosecutor again rejected the warrant request.

23. On April 23, 2019, the Wayne County Prosecutor's Office issued an extraordinary press release which explained why it declined to issue any criminal charges against Plaintiff for his Facebook postings.

24. The press release read:

On December 18, 2018, Prosecutor Kym Worthy was presented with a warrant request by the Detroit Police Department (DPD) for Detroit Fire Department (DFD) Captain Michael Nevin, who is president of the Detroit Firefighters Association. DPD contended that Captain Nevin violated the law when he allegedly posted 21 Fire Department Computer Aided Dispatch (CAD) reports, to both the Detroit Fire Union Facebook account, and his personal account, that contained identifying information for two potential witnesses to a fatal shooting that occurred on November 23, 2018. It is alleged that Capt. Nevin released the CAD reports to show the slow response time by DPD to 911 calls.

*After a thorough review of the facts and evidence in this case, it has been determined that no crime has been committed. This information disclosed is not covered by the Law Enforcement Network statutes and is not confidential pursuant to any other Michigan statutes. Further, the DFD has not officially adopted any internal policy or requirement regarding the confidentiality of CAD reports. Accordingly, the warrant request against Capt. Nevin has been denied.* (Italics/Underscore added.)

25. On January 11, 2019, Defendant Distelrath provided formal notice to Plaintiff Nevin that due to the ongoing criminal investigation by IA, the DFD was

6

unilaterally (and unlawfully) extending the timeframe for notification of potential discipline to six months from November 30, 2018, the date the DFD first became aware of the unauthorized disclosure of information.

26. On June 11, 2019, Sgt. Wilson notified Plaintiff that he was required to sit for a *Garrity* interview with the IA division of the DPD scheduled for June 24, 2019.

27. The date for the *Garrity* interview was adjourned to June 26, 2019.

28. On June 25, 2019, Defendant Distelrath received a copy of a grievance filed by the DFFA regarding the *Garrity* interview and discussed the issue with Deputy Commissioner Puricelli regarding the Fire Department's response to the grievance.

29. Plaintiff's investigation by IA was a topic of discussion at labor relations meetings which he regularly attended.

30. Under Article 10 of the parties' contract, Section C, "Investigation/Discipline," the *Garrity* interview of Plaintiff of June 26, 2019, took place about one month after the date the DFD would have been required to notify Plaintiff of any potential disciplinary action. Defendants did not care.

31. On June 26, 2019, despite the repeated rejections of the warrant request and absence of any criminal conduct, DPD Sgt. Deanna Wilson IA conducted a *Garrity* interview of Plaintiff about the November 2018 disclosures.

7

32. Plaintiff responded to the questions asked of him.

33. Despite the extraordinary public declaration by the Wayne County Prosecutor, Plaintiff was told by Deputy Commissioner Sydney Puricelli that the DFD was still looking at a possible violation, the DFD was not done with him and that "they were going to dig."

34. Historically, Union executive board members, like Plaintiff, were routinely permitted to "ride the rigs."

35. Allowing DFFA officers to "ride the rigs" enabled DFFA officers to maintain their professional proficiencies, build morale, allow them to assess and evaluate firefighters under their command, and assist them in representing bargaining unit members, an experience that would otherwise not be available to them while on paid release time.

36. In addition, periodically riding the rigs allows DFFA officers, like Plaintiff, to keep abreast of changes in personnel, building occupancies, tools and apparatus, such as airbags, chainsaws and the "Jaws of Life"--all essential to protect the citizens of Detroit.

37. Prior to Plaintiff's protected activity, the DFD had always been receptive to the practice of DFFA members riding the rigs because of its obvious importance to fire fighting.

38. On July 26, 2019, Plaintiff wrote to Defendant Distelrath and requested permission to work fire-fighting units with his assigned company on August 5, 2019, August 12, 2019, and August 26, 2019.

39. On July 29, 2019, the DFFA Treasurer rode a fire rig with approval from the Defendant Distelrath.

40. On July 30, 2019, Defendant Distelrath denied Plaintiff's request in writing without any explanation or rationale.

41. Plaintiff was shocked.

42. After denying Plaintiff's written request to work in the field and ride the rigs, Defendant Chief Distelrath ordered Senior Chief Freeman not to allow Plaintiff to ride a rig at any time.

43. Deputy Commissioner Fornell told Plaintiff the City was going to give Plaintiff some "grief" because Plaintiff, as the President of the DFFA, filed unfair labor practices grievances and complained to MIOSHA about the lack of safety for firefighters.

44. On August 8, 2019, the DFFA filed a grievance which alleged that Plaintiff was discriminated against when Distelrath denied his request for a "ride-along" with his assigned squad in retaliation for his protected speech and further retaliated against Plaintiff by allowing the untimely *Garrity* interview to take place.

45. Defendant Distelrath contacted DFFA Secretary Tom Gehart to complain about the filings of unfair labor practices and MIOSHA complaints by Plaintiff and the DFFA.

46. On September 19, 2019, Plaintiff Nevin provided Defendant Distelrath with a second written request to ride the rigs.

47. In this request, Plaintiff sought to work in the field with his squad on September 30, 2019, October 6, 2019, and October 14, 2019.

48. Once again, Defendant Distelrath denied Plaintiff's request.

49. Plaintiff filed a Union grievance for the unlawful labor practice.

50. On January 5, 2021, Administrative Law Judge David M. Pelz of the Michigan Office of Administrative Hearings and Rules, issued a "Decision and Recommended Order of Administrative Law Judge" which found that Distelrath and the DFD retaliated against Plaintiff for his protected activity when they prohibited him from riding the rigs with his squad. (**Exhibit A, ALJ Opinion**)

## COUNT I

### VIOLATION OF PLAINTIFF'S FIRST AMENDMENT FREE SPEECH RIGHTS PURSUANT TO *42 USC §1983*

51. Plaintiff reasserts paragraphs 1 through 50, word for word and paragraph for paragraph.

52. The *First Amendment* prohibits retaliation by a public employer against an employee on the basis of certain instances of protected speech by the employee.

53. Plaintiff was a 33-year fire fighter for the City of Detroit.

54. It was not part of Plaintiff's job duties or responsibilities to criticize the operation or management of the DFD, file Union grievances, MIOSHA complaints, comment on response times or misinformation published by the City of Detroit or otherwise engage in the type of citizen speech which lead to the retaliatory action identified herein.

55. Plaintiff exercised his clearly established *First Amendment* free speech rights when he spoke out on matters of substantial public concern (i.e., public safety, misclassification of crimes, misuse of resources, operation of government, etc.), as alleged above.

56. When Plaintiff spoke out, he did so in his capacity as DFFA president and as a citizen speaking out on matters at the zenith of public concern *i.e.,* operation of the DFD and law enforcement, public safety, and related matters.

57. Plaintiff's interest in free speech outweighed the employer's interest in efficiency under the *Pickering* balancing test.

58. Plaintiff's communications and disclosures are protected activity and/or conduct under the *First Amendment* to the United States Constitution. US Const., Art. I.

59. As described above, adverse actions were taken against Plaintiff such that would deter a person of ordinary firmness from continuing to engage in the exercise of their *First Amendment* free speech rights.

60. There is a causal connection between Plaintiff's exercise of his *First Amendment* free speech rights and the adverse employment actions visited upon him by Defendants as identified herein.

61. Plaintiff's *First Amendment* free speech rights were clearly established at the time of the constitutional violations and any reasonable state actor would know that retaliating against Plaintiff for the exercise of his federally protected rights was unconstitutional and wrong.

62. Defendant Distelrath's actions were deliberate and intentional.

63. As a direct and proximate result of Defendant Distelrath's violation of Plaintiff's *First Amendment* rights, Plaintiff suffered injuries and damages, including but not limited to, mental and emotional distress, outrage, embarrassment, humiliation, anxiety, anger, loss of reputation in the community, loss wages and benefits, and other economic and non-economic losses which will continue throughout and beyond the pendency of this action.

## COUNT II

## *MONELL* CLAIM AGAINST THE CITY OF DETROIT

64. Plaintiff realleges paragraphs 1 through 63, word for word and paragraph for paragraph.

65. At the time of the constitutional deprivations described above, Defendant City of Detroit had an illegal policy or custom of retaliating against and attempting to silence employees, like Plaintiff, who exercised their clearly established *First Amendment* constitutional rights to speak out as citizens on matters of substantial public concern, as Plaintiff did.

66. At the time of the constitutional deprivations described above, Defendant City of Detroit failed to properly supervise or train its department heads, policy makers, employees and/or agents concerning violations of its employees' civil rights and legal requirement to refrain from acts of retaliation because of complaints or concerns voiced by employees, as Plaintiff voiced his concerns in this case.

67. The unconstitutional acts and omissions described herein were made or ratified by an official with final decision-making authority (*i.e.,* Defendant Distelrath) and/or the City's custom of acquiescence and tolerance to unlawful retaliation against public employees who engaged in *Free Speech* protected under the *First Amendment,* like Plaintiff.

68. As a direct and proximate result of Defendant City of Detroit's wrongful acts and omissions, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation.

## RELIEF REQUESTED

**PLAINTIFF REQUESTS** that this Court enter a judgment against Defendants Distelrath and the City of Detroit, jointly and severally, as follows:

1. Legal relief:

    a. A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled, should same apply;

    b. Compensatory damages in whatever amount he is found to be entitled;

    c. Punitive and exemplary damages, where appropriate, commensurate with the wrong and Defendants' ability to pay;

    d. An award of interests, costs and reasonable attorney fees as provided by the *42 USC § 1988*.

2. Equitable relief:

   a. An injunction which prohibits Defendants from any further retaliation against Plaintiff;

   b. Whatever other equitable relief the Court deems to be appropriate.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

August 23, 2021

## **DEMAND FOR JURY TRIAL**

Plaintiff Michael Nevin demands a jury trial of this cause of action.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Dated: August 23, 2021